UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

LILLIAN T. KIPLING

DEBTOR  CASE NO. 09-20142
Chapter 13

RANDY A. KIPLING

DEBTOR  CASE NO. 09-22919
CHAPTER 13

### MEMORANDUM OPINION

The court has before it matters in both these Chapter 13 cases involving debtors who are former spouses (hereinafter "Lillian" and "Randy"). The matters involve proofs of claims, motions to compel, and an application to incur additional debt. All these matters implicate the Debtors' divorce and property settlement. According to a copy of the Partial Agreement of Parties (the "Partial Agreement")[Doc. #37L][1] filed in Lillian's case, Randy and Lillian were married in 1993, and their marriage was dissolved by a bifurcated Decree of Dissolution entered on July 12, 2006 (the "Decree") in the Boone Circuit Court, Case No. 05-CI-1241 (the "Divorce Action"). The Partial Agreement, entered into on August 21, 2006, is referred to therein as a " Partial Property Settlement Agreement." That Agreement contains no provisions relating to maintenance, child support, but provides, among other things, for the sale of the former marital residence located at 916 Caitlin Drive, Union, Kentucky 41091 (the "Property"). Specifically, the Property was to be listed for sale at an

---

[1] Document numbers from each case will hereinafter be designated "R" for Randy's case and "L" for Lillian's case.

1

initial price of $825,000.00 and each Debtor agreed to "cooperate with the listing agent regarding the sale of the house and any showings" (Partial Agreement, Para. 3). Upon the sale of the Property, following the payment of sale expenses, Fifth Third's first mortgage and equity line of credit were to be paid. Until sale, the property taxes were to be paid equally by the parties. The Debtors further agreed to reduce the monthly house payment and equity line payment by refinancing the first mortgage and equity line of credit loan within sixty (60) days of July 12, 2006.  There is no evidence in this record regarding whether this refinancing occurred.

The Partial Agreement is silent regarding the timetable for sale and does not expressly assign responsibility for payment of the first mortgage or equity line of credit pending sale.

1. <u>Lillian's Bankruptcy</u>

Lillian's Chapter 13 petition and Plan were filed on January 29, 2009.  The Plan [Doc 3L] proposed to sell the Property, via private sale, stating that the Property would be listed with a realtor for 60 months. The listing agreement appended to the Plan set the listing price at $762,400.00 and was not signed by Randy.  An Order Confirming Chapter 13 Plan was entered on April 1, 2009 [Doc. 19L].[2]  Until sale, Lillian's Plan provided she would make the contractual payments outside the Plan directly to Fifth Third.

a. <u>Fifth Third's Motion on Relief from Stay</u>

Four months later, Fifth Third filed a Motion for Relief From Stay [Doc. 24L] stating that Lillian had breached the terms of her confirmed plan by not making post-petition payments to it, and seeking to foreclose

---

[2]Plan was amended - not relevant to the analysis.

2

on its mortgage.  Lillian filed an Objection acknowledging the arrearage, but claiming that the default was due to Randy's not making his half of the mortgage payments to Fifth Third as required by their divorce agreement.  At the hearing on the motion, the parties announced an agreed disposition.  On September 21, 2009, an Agreed Order [Doc. #33L] was entered, providing for the cure of the arrearage.  Subsequently, on November 9, 2009, an Agreed Order [Doc. #50L] was entered in regard to curing arrearages owing on the second mortgage with Fifth Third.  Randy was not a party to either of these Agreed Orders.

    b.   <u>Randy's Motion for Relief from Stay</u>

On October 2, 2009, Randy filed a Motion for Relief from Stay, in Lillian's case, seeking authority to file a motion in the Divorce Action to "determine the proper listing price" for the Property because Lillian "will not agree to lower the listing price" [Doc. 36L].  Randy's Motion was granted by Order entered October 15, 2009 [Doc. 44L].  However, the record is devoid of any evidence of any resulting rulings in the Divorce Action.

    2.   <u>Randy's Bankruptcy</u>

Randy filed his Chapter 13 petition on November 9, 2009; his Statement of Financial Affairs, Schedules, and Chapter 13 Plan were filed on November 25, 2009.  The Plan provides that Randy will "surrender" the Property at issue herein.  Lillian filed an Objection to Confirmation [Doc. #27R] on December 29, 2009, alleging that his Plan did not adequately provide for payment in full of domestic support obligations, that he has not submitted all his disposable income to the Plan, that he asserted improper exemptions, and that he understated his income on Schedule I.  The Trustee's Report and Recommendation did not recommend confirmation.

The Plan has not yet been confirmed.

    3.    <u>The Pending Motions</u>

        a.    <u>Motions in Lillian's Case</u>

Lillian has filed an Application to Incur Additional Debt in regard to the first mortgage with Fifth Third [Doc. #56L][3]. The Application seeks leave to enter into a mortgage loan modification agreement with Fifth Third (the "Loan Modification") to lower the monthly mortgage payment from $2,570.00 to $1,381.38 per month. It contends that the proposed Loan Modification would put Lillian back in a position similar to the one she was in relative to the first mortgage payment before Randy discontinued making one-half of the mortgage payment. The proposed Loan Modification extends the maturity date of the loan to 2050.

Randy filed his Response to the Application to Incur Additional Debt on February 12, 2010 [Doc. #58L]. He states that Fifth Third requires his signature on the Loan Modification, and that Lillian has filed a Motion to Compel him to sign it in his bankruptcy case. He complains that Lillian's Plan calls for the sale of the subject Property, but that she has refused to take steps to get it sold. Randy objects to signing a post-petition loan modification agreement as such could be interpreted as his re-obligating himself on the mortgage. He further states that his bankruptcy case is "in limbo" until the Property is sold and a determination made as to whether there will be a shortfall on the mortgages, while Lillian wants to enter into a Loan Modification with a maturity date of 2050.

        b.    <u>Motions in Randy's Case</u>

In Randy's case, Lillian filed her Motion to Compel [Doc. #30R]

---

[3] A prior Application for Incur Debt relating to the second mortgage [Doc. #57L] was unopposed and granted on March 8, 2010 [Doc. #59L].

4

seeking to compel Randy to execute a quit claim deed and loan modification documents in regard to Fifth Third Bank's first mortgage on the Property (which is the subject of Lillian's Application to Incur Additional Debt discussed above).  Randy filed his Response to Motion to Compel [Doc. #34R] on February 16, 2010, stating that Fifth Third requires his signature on the Loan Modification.  He objects to signing a post-petition loan modification agreement as such could be interpreted as his re-obligating himself on the mortgage.

Randy again complains that Lillian's Plan calls for the sale of the subject Property, but that she has refused to take steps to get it sold.  As with his objection to Lillian's Application to Incur Additional Debt, he further states that his bankruptcy case is "in limbo" until the Property is sold and a determination made as to whether there will be a shortfall on the mortgages, while Lillian wants to enter into a Loan Modification with a maturity date of 2050.

Lillian filed a second Motion to Compel [Doc. #33R] in regard to Fifth Third's second mortgage.  Randy filed his Response to Motion to Compel [Doc. #38R], raising the same objections made in his prior Response.

<u>DISCUSSION</u>

5.   <u>Lillian's Application to Incur Additional Debt</u>

Lillian's Application to Incur and Motion to Compel essentially asks this court to either modify her confirmed plan (by altering the treatment of a secured claim; i.e., the mortgage debts which was to be paid according to the respective contract terms); or enforce a property claim against a Debtor pursuant to the parties' Decree of Dissolution (as noted above, the record herein is devoid of complete rulings in the Divorce

5

Action, including the Decree); or perhaps modify the parties' divorce agreement(s).

The proposed Loan Modification names both the Debtor and Randy as borrowers. The court observes that even if Randy were willing to execute the Loan Modification, Lillian's Application to Incur Additional Debt does not appear to advance the objectives of her Chapter 13 Plan, ostensibly to sell the home and pay her creditors. Rather it appears that either Lillian is attempting to unduly delay the sale of the former residence to which she previously agreed, or Randy is attempting to avoid an obligation imposed by the Divorce Action. The court will decline to adjudicate the tug of war between these dueling Debtors. Moreover, Lillian has provided no legal authority to support her request to compel Randy to quit-claim the subject Property to her.

Accordingly, based on the incomplete record of the Divorce Action herein and the provisions of Lillian's confirmed Plan to which she is bound, the court shall deny Lillian's Application to Incur Additional Debt [Doc. #56L] and the Motions to Compel [Doc. #30R and Doc. #33R].

6. The Claim Objections

Lillian's POC #2 filed in Randy's case for domestic support obligations claims $838.74 due for child support arrearage plus $5,339.73 for extracurricular activities for the parties' children. In his objection [Doc. 46R], Randy contends that Lillian's list of amounts owed is not sufficient as a supporting document evidencing the claim as required by LBR 3001-1. He further states that the order which retroactively increased his child support was not entered until November 18, 2009, as the result of a hearing held after the filing of his bankruptcy petition. He states that he owes no child support arrearage, having paid it outside the

bankruptcy on December 26, 2009.  He has attached a copy of a KASES Payment History Inquiry which shows his having paid $978.50 on that date. In regard to claims for extracurricular expenses for the parties' children, Randy states that these expenses are not itemized and are without supporting documents, and that further they have not been adjudicated as due and owing by the Boone Family Court.  Lillian's Response [Doc. #61R] only states that her claim is valid and should be allowed.

Lillian's POC #3 filed in Randy's case claims $2,020.00 for two payments of $1,010.00 each to Fifth Third in October and November 2009. These payments are identified as debts paid by Lillian which were assigned to Randy in their divorce.  Randy's Objection [Doc. # 47R] states that no supporting documents have been filed evidencing the claim, and that Lillian has provided no proof that the payments set out therein are for anything other than debt she personally owes Fifth Third.  Lillian's Response [Doc. #62R] again states only that her claim is valid and should be allowed.

Bankruptcy Code section 502(a) provides that a claim asserted by a filed proof of claim is allowed unless an objection is filed and sustained. Bankruptcy Rule 3001(f) provides that a proof of claim properly filed and executed constitutes prima facie evidence of the validity and amount of the claim.  An objector to the proof of claim then must produce evidence sufficient to overcome this presumption of validity.

> In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.
> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is deemed allowed, the burden of initially going forward with the evidence as to the validity and the amount of the claim

7

> is that of the objector to the claim.  In short, the
> allegations of the proof of claim are taken as true.  If
> those allegations set forth all the necessary facts to
> establish a claim and are not self-contradictory, they
> prima facie establish the claim.  Should objection be
> taken, the objector is then called upon to produce evidence
> and show facts tending to defeat the claim by probative
> force equal to the allegations of the proofs of claims
> themselves.  But the ultimate burden of persuasion is
> always on the claimant.  Thus it may be said that the proof
> of claim is some evidence as to its validity and amount.
>  It is strong enough to carry over a mere formal objection
> without more.

*In re Sacko*, 394 B.R. 90, 97 (Bankr. E.D. Pa. 2008) (internal quotations and citations omitted).

In reviewing Claim No. 2, Randy has produced evidence and shown probative facts that establish he does not owe any child support arrearage. As concerns sums claimed through September 25, 2009 for the children's extracurricular activities, the "Statement of Account (Domestic Support Obligation)" attached to the Proof of Claim refers to these expenses as having been ordered to be paid by the Debtor per the terms of the Boone Circuit Court divorce proceeding.  An Exhibit B is noted as being attached in support, but this is merely a listing of unspecified sums alleged to be owed with no description of expenses alleged to have been paid as "extracurricular activities".  Lillian, as the claimant, must supplement her documentation of the claim for the children's extracurricular activities expenses to show that they indeed are due and owing per an order of the Boone Circuit Court.

As regards POC #3, the "Statement of Account (General Unsecured)" suffers from the same lack of documentation as set out above. This is merely a listing of amounts alleged to be owed to Lillian for payments she made to Fifth Third.  The court will therefore require Lillian to supplement her documentation of this claim to support her assertion

that the Debtor was obligated to make the payments.  An Order in conformity herein shall be entered.

Copies to:

Keith A. McMain, Esq.
John M. Schultz, Esq.

9

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, June 23, 2010**
**(tnw)**